**09 CA 10026 WGY**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

HEIDI K. ERICKSON,
*Plaintiff*

v.

**VERIFIED COMPLAINT**
*And Jury Demand*

DENNIS P. BALBONI, PETER A. BALBONI
PIOPIES PACKAGE STORE,
*Defendant*

MAGISTRATE JUDGE

PARTIES

Heidi K. Erickson hereinafter "Erickson" Plaintiff a resident of Massachusetts and a person identified as disabled pursuant to the definitions of American's with Disabilities Act (hereinafter "ADA") Title III, 42 CFR § 12181 et seq, and 45 C.F.R. section 36.303 and MGLc151b sec 1 para 17 and uses a "service dog" to accommodate a disability she has had her entire life.

Piopie Package Stores, (liquor store) selling alcohol and related goods and services to the general public since 1933 whose address is 183 Court St, Plymouth, MA and other wise owned by Peter Balboni and Dennis Balboni of 66 Sandwich St, Plymouth, MA 02360.

Peter A. Balboni is the store managers for Piopie Package Store acted to discriminate against Erickson because of her service dog in refusing to modify rules, policies practices and services if she is accompanied with her service dog.

Erickson sent individual certified letters to each Defendant placing same on notice and that to secure the preservation of its 3 security cameras which video taped the entire incident at the front of the store immediately in front of its cash registers. Plaintiff has attempted to contact and left her telephone number requesting the Defendant both preserve said evidence and to reach her immediately about this incident in an attempt to negotiate fairly a resolution and has left her telephone (cell) number . Defendants have failed to contact her and Plaintiff has information and belief that the Defendants will intentionally destroy the evidence of this incidence without an immediate order, therefore she relies upon the attached <u>Emergency Motion To Preserve Evidence</u> with attached exhibits verifying delivery and receipt of requests to preserve.

JURISDICTION

This Honorable Court has original jurisdiction over the Complaint pursuant to 28 U.S.C. sec. 1331 because the complaint contains a cause of action against the Defendants under the federal statute known as the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12181 et. seq. whereby the Complaint alleges a refusal to make reasonable accommodation as to rules, policies, practices and services related to service animals under Title III of the Act.

RECEIVED IN CLERK'S OFFICE
DATE 1-7-09

1

Plaintiff filed a MCAD Complaint and immediately requested a right to suit letter, although the federal law has no prerequisite to filing suit under Title III of the ADA and therefore there is no exhaustion of administrative remedies and the letter requesting suit is sufficient to exhaust same pursuant to GLc151b sec9 this Court has jurisdiction and to enforce the Americans with Disabilities Act 42 CFR § 12181 et seq and § 12188(b), Title III.

## FACTS

1. Erickson files this lawsuit claiming that on 12/31/08 at approximately 1:30-2pm Peter A. Balboni the owner of Piopie's refused to allow her to remain in the store with her trained service dog 'Gretal' who was wearing a red harness, nose-guard and id tag (Exh. 2) indicating Gretal was a certified service dog for Erickson's disability. Peter Balboni told all his employees to not give Erickson or to ring up Erickson's purchase of champainge and then immediately called the police as Erickson stood at the check-out register. These actions Erickson believes are in violation of the aforementioned Title III of the ADA and were also made to make her look criminal in the eyes of the public, these actions also constituted unlawful discriminatory practices made unlawful under GLc151b sec4, unfair practice under GLc93A, and was a violation of 42 U.S.C. section 12181 et seq. and 45 C.F.R. section 36.303, and intended to harm her emotionally and phyiscally.

2. A service animal is defined under the federal regulations as:
[A]ny guide dog, signal dog, or other animal individually trained to do work or perform tasks for the benefit of an individual with a disability, including, but not limited to, guiding individuals with impaired vision, alerting individuals with impaired hearing to intruders or sounds, providing minimal protection or rescue work, pulling a wheelchair, or fetching dropped items.

3. GLc151b sec 4 para 17 defines the term "handicap" [disability] means (a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment, but such term shall not include current, illegal use of a controlled substance as defined in section one of chapter ninety-four C.

4. Erickson suffers from multiple disabilities and has been accommodated by an animal for her entire life and more recently by Socrates whom she lost recently. The recommendations by physicians is documented by letter Dr. Catlin, (Harvard University) and Affidavit Richard Fraser, MD, (Hearings Officer for the Commonwealth Industrial Accidents Board) recommending the continued use of same. (Exh. 1)

2

5. On Wednesday December 31st, 2008 Plaintiff, Ms. Erickson, called ahead to Piopie's Package Store located at 183 Court Street Plymouth to order a bottle of Champainge (Martini and Rossi's Asti) and arrived shortly thereafter accompanied by her 'service dog' Gretal who was wearing a red harness, nose guard and an id tag indicating that Gretal was a certified service dog, and an assistance dog for Heidi Erickson.

6. Erickson, without incidents has been in the Defendant's store on various occasions over the last year with her service dog Gretal at which time she had identified Gretal as a service dog used to accommodate Erickson's disability and at all times during this incident on 12/31/08 and prior Gretal has acted appropriately, and was wearing a red harness, nose guard and id tag. On December 31st 2008 Kim Balboni (Defendant's wife) whom Plaintiff has never meet, was working and approached Ms. Erickson frowned, hissed and showed her disgust. She left to a back room where Peter Balboni walked out of and walked up to Ms. Erickson who was with Champaign in hand walking up to the register. Balboni told her to "take the dog outside". Ms. Erickson immediately informed Balboni that she was disabled and the dog was used as an accommodation to aid her disability" and tried to show him her id tag, Defendant was not interested and Erickson stated "she's trained to aid me with my disability, and is working, here is a tag indicating she is certified". Erickson showing Balboni the 'service dog tag' said she's "specifically, individually trained and used to accommodate". Balboni said "I don't care about all that, you have to take the dog outside or else you will have to leave or I will call the police" – "I will not serve you with that dog!" Defendant became louder. Gretal was at all times behaving, wearing a red harness, a nose guard, and an id tag identifying her as a service dog. Erickson was soft spoken and Defendant heard her. Erickson then said "the law allows her to be with me in stores". Defendant stated harshly "Well I'm calling the police and they'll tell you the law" . Erickson continued to speak in an attempt to reason with politeness and once again soft spoke manner: "It would be discrimination to eliminate me from your services because I use a dog to aid me with a disability", Defendant walked away yelling "we'll see what the police say" nothing more was said.

7. Ms. Erickson, with Champaign in hand at the register called the police and spoke with a female dispatcher Erickson asked did you just receive a call from Piopies about a incident with a service dog. The dispatcher said yes, who are you, Erickson identified herself and the dispatcher's tone changed. Erickson asked : "what did you inform the caller about the regulations about service dogs?" the dispatcher said "the police are on their way" and hung up the call.  Erickson at the counter asked the clerk to ring her up and the clerk said "I was told not to". Then another clerk came up waved a women toward him although there was plenty of room at three registers attended by clerks with no one else in line or at the register. The store had a few people inside, although there was a snow storm outside and 6-8" of new fallen snow within the last

3

2-3 hours, high winds white out conditions, this other clerk was insisting on using the register that Erickson was standing thereat, waiting thereat patiently for service or the police to arrive to inform Peter Balboni that service dogs are allowed in service establishments and that his issue as a civil issue. Just then a woman whom appeared intoxicated and familiar to the employees, as they were calling her by name, pushed Erickson aside, "nobody cares about you freak". The clerk said "No body care about your defects and wishes you go away". The woman became more aggressive verbally insulting Erickson further calling her again freak. Erickson was amazed and was shocked. The clerked seemed to know this woman and laughed and said something like "I wonder what the dog would do if you attacked her" then he commented toward Erickson evidently in a way to provoke her by stating "you crippled, no one cares about having your kind in here". "I will not serve your kind". Nothing else was exchanged, except that Plaintiff once again identified that she was accompanied by a service dog for her disability and once again tried calling the police – "the dog is used to accommodate a disability – "she is a service dog and he is wearing an identification tag". No one specifically told Erickson to leave, except for Defendant Peter Balboni, and Erickson believed he was seeking clarification from the Police.

8. All of a sudden this women, later identified as Jessica Cristani, of 42 Stillwater Drive Plymouth, MA grabbed Erickson and shoved nearly toppling her to the ground. The woman smelled of alcohol and was evidently intoxicated. Then the woman laughed and stated loudly your attack dog doesn't do anything. Erickson totally shocked and crying while runningout side said "my dog's not an attack dog, she is a service dog trained for a disability" Erickson immediately called 911 and reported the assault. The woman ran after Erickson and upon her noticing the Erickson had called 911 got inside her dark green jeep Charokee with plates 97AP, and drove off hastily.

9. The local police arrived and failed to offer Erickson assistance, failed to clarify to the Defendants the civil issue of the laws allowing service dogs into establishments and Erickson left with no police service left file a report with the Chief of Police Boterie whom is currently named a defendant in a civil matter that Erickson has filed in this Honorable Court against the named Police Chief, various officers and the Department.

10. When the police arrived, Erickson stated her dog is a certified service dog for her disability and showed the officers the dog's id tag indicating the dog is a certified service dog, a picture of the dog and that it is an assistance dog trained for Erickson. This statement by Erickson, was received with no comment by the officers who did not followed it by an examination of the dog's id tag. But the officers said that they were issuing a no trespass warning to Erickson and that they were no going to arrest

4

the woman (Jessica Cristani) because it was a simple assault. Erickson reminded the officers of the assault and battery statute upon a disabled person and they said that was not an arrestable offense and left.

11. Plaintiff claimed to the police that she was a victim Jessica Cristani's assault and battery punishable under GLc265 sec13K which is an arrestable offence, the local police have done nothing to investigate this crime by securing the video tapes of the assault despite there being at least 3 video camera's on the registers and several others thoroughout the store.

12. The recordings/videos from the multiple cameras in the Piopie's Package Store will show to be correct the events as described by the Plaintiff to be true and support for her claims against the Defendants and evidence of the dogs performance while in the store, the Defendant Peter Balboni demanding Erickson to leave, the employs who refused to serve her by ringing up her purchase, and their encouragement and service of an intoxicated female and the attack upon Erickson by Jessica Cristani.

## CLAIM I
### Discrimination
42 U.S.C. section 12182 and 45 C.F.R. section 36.303

Plaintiff refers to the hereinabove 1-10 paragraphs as fully set forth and claims that the Defendants actions are made unlawful by, and Discrimination has occurred pursuant to

## CLAIM II
### Discrimination
GLc151b sec4

Plaintiff refers to the hereinabove 1-10 paragraphs as fully set forth and claims that the Defendants actions are made unlawful by, and Discrimination has occurred pursuant to GLc151b sec4.

## CLAIM III
### Emotional Distress

Plaintiff refers to the hereinabove 1-10 paragraphs as fully set forth and claims that the Defendants actions were outrageous beyond all bounds of decency.

RELIEF REQUESTED
1. Enter a Temporary and Permanent Order directing the Defendants Dennis Balboni, Peter Balboni and Piopies Package Store and its agents, employees and associations to refrain from interference with the access to its stores by the Plaintiff accompanied by her service dog.
   a. Alternatively Enter a short Order Notice to Return on Friday January 23rd, 2009 at Noon to answer why a TRO (or preliminary

      injunction) should not enter immediately to provide Erickson access to any of its services if accompanied by her service dog.

2. Enter a Temporary and Permanent Order directing the Defendants Dennis Balboni, Peter Balboni and Piopies Package Store and its agents, employees and associations to refrain from attempting to destroy any of the recordings of the incident as referred to in this Complaint and to preserve same.
   a. Enter a Order preserving all records of the incident of 12.31.08 at approximately 1:30pm-2pm at 183 Court Street, Plymouth, MA. Including the defendants security/surveillance records, telephone and police taret (911) tape and to produce same for a hearing on the issues and in order for Erickson to prepare.

2. Enter a finding on all counts in Erickson's favor.

3. Grant Erickson all costs involved in securing this adjudication.

4. Grant Erickson a finding as to each of her counts and damages, all statutory relief and all fees.

5. Grant Erickson such other and further relief as this Court deems just and fair.

Dated: Boston, Massachusetts
January 7th, 2009

Respectfully submitted by,

Heidi Kristine Erickson
Harvard Sq. Postal Station
Box 380445
Cambridge, MA 02238
617-319-4000

By signature hereinabove I, Heidi K. Erickson attest under the pains and penalties of perjury the Facts herein as stated are true and that I have made reasonable attempts to seek compliance from Defendants prior to filing this Complaint.

6

## RICHARD FRASER MD
### OCCUPATIONAL MEDICINE
775 – 703 – 1031 (fax)   25 Lull Street  Westwood, MA 02090  781- 690 – 1339 (voice)
www.RichardFraserMD.com       E-mail: Richard Fraser MD@aol.com

July 11, 2008

### AFFIDAVIT OF RICHARD FRASER, MD

I am a practicing physician since 1985, licensed in the Commonwealth of Massachusetts, board certified in Internal Medicine and Geriatric Medicine and board –eligible in Occupational Medicine. I also serve as an examiner for the Commonwealth's Industrial Accident Board which gives me particular knowledge of and sensitivity for the physical and emotional effects caused by stressful environments as well as understanding as it relates to reasonable disability accommodations. As part of my practice and employment I am very familiar with the medical legal terms of 'disability', 'functional limitations' and 'structural barrier'. In addition, I have had many patients for whom I have had to make recommendations as to their living environment.

I have known Ms. Erickson for nearly 7 years (approximately 2001), and have reviewed her medical history. During this time, I have periodically evaluated her medical conditions, made recommendations and disability determinations and observed her symptoms and behavior. Despite Ms. Erickson's high intellectual functioning she has severe deficits in areas that impair normal social interactions leading to a variety of difficulty with others and this leads to dangerous aggravations to her underlying medical conditions.

In summary, Ms. Erickson has a number of disabilities that require reasonable accommodations, herein I am addressing those accommodations related to her housing with animal-assisted therapy. Ms. Erickson is at risk of deteriorating social function. animal-assisted therapy, animal-assisted activities, and human-animal interaction reduce the risk of deteriorating social function, and reduce the risk of social withdrawal and isolation. With the assistance of a companion animal, Ms. Erickson will be able to function and manage the symptoms of her disability and functional impairment.

This last year I have been monitoring Ms. Erickson and recommended to her the re-acquisition of a service dog to reduce her symptoms. I evaluated Ms. Erickson several times during this period and on July 11th, 2008 I evaluated Ms. Erickson accompanied by her service dog (Gretal). During my examination of Ms. Erickson, she showed marked improvement and an alleviation of her symptoms. Gretal acted appropriately at all times while in my office despite much environmental stimulation with a waiting room full of other patients and while another dog continually barked. The actions of this service dog while in my office, a public space, was well mannered, and obedient to Ms. Erickson. The dog was continuously attentive to Ms. Erickson exclusively and did not attempt to interact with other people unless those people attempted to interact with the service dog and upon doing so was gentle and non-intrusive.

In my opinion Ms. Erickson's use of animal assisted therapy is alleviating her symptoms and making it possible for her to cope with her disability. I recommend the continued use of these resources.

By signing hereafter I attest that the above paragraphs are true under the pains and penalties of perjury.

_____
Richard Fraser, MD   July 14th, 2008

Exh 2

